**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Donald Humes,

    Plaintiff

v.

Acuity, a Mutual Insurance Company,

    Defendant

Case No.: 2:17-cv-01778-JAD-BNW

**Order Granting in Part Acuity's Motion for Partial Summary Judgment and Denying Humes's Motion to Strike**

[ECF Nos. 72, 81]

    I previously denied Acuity's motion for a determination that South Dakota law governs this case because the motion didn't comply with Federal Rule of Civil Procedure 56.[1] Acuity then filed this motion for partial summary judgment on Humes's theory that Acuity breached the implied covenant of good faith and fair dealing in handling his claim based on South Dakota law.[2] Humes moves to strike a number of Acuity's affirmative defenses, arguing that they are not supported by evidence.[3] I find that this action is governed by South Dakota law, but because genuine issues of fact surrounding Acuity's handling of Humes's claim remain, I deny its motion for summary judgment in its favor on the bad-faith claim. I also deny Humes's motion to strike because courts can't weigh evidence in a Rule 12(f) motion. But because Acuity agreed to waive some of its defenses, I deem those defenses withdrawn.

---

[1] ECF No. 67 (order).

[2] ECF No. 72 (motion for summary judgment).

[3] ECF No. 81 (motion to strike).

**Background**

In South Dakota in 2012, Donald Humes obtained an auto insurance policy from Acuity Mutual Insurance Company for his company, AM Development LLC.[4] The policy provides $1,000,000 in underinsured/uninsured coverage. The following April, Humes was involved in a collision in Las Vegas, Nevada, in which he claims he sustained injuries to his cervical and lumbar spine.[5]

On April 10, 2013, Humes's counsel asked Acuity for confirmation of his coverage and gave Acuity a HIPAA authorization for use in evaluating his claim.[6] The authorization was a broad medical release for Humes's medical treatment from the date of the accident going forward.[7] In October 2015, after Humes had received two years of treatment, his counsel made a $250,000 demand for his policy's underinsured motorist benefits and provided Acuity with another HIPAA authorization to aid in its evaluation.[8] Acuity acknowledged the demand, asked for confirmation that Humes had settled his claim with the tortfeasor, and asked for a corrected HIPAA release "for each medical provider your client has treated with prior to this accident" and any provider "since this accident" that it didn't already know about.[9]

The parties corresponded for several months about expired releases and Humes's pre-accident medical treatment. In another letter that November, Acuity explained that the previous release had expired before Acuity had received it and that it needed Humes's medical records for

---

[4] ECF No. 72 at 21.
[5] ECF No. 78 at 23 (police report); *id*. at 63 (claims log); *see also* ECF No. 1 at 8 (complaint).
[6] ECF No. 78 at 66.
[7] *Id*. at 67.
[8] *Id*. at 70–73.
[9] *Id*. at 75.

the period of five years before the accident.[10]  Humes fixed the expired authorization for his records from the day of the accident going forward[11] and submitted another dating back five years before the accident.[12]  Acuity responded that it was obtaining and evaluating the missing medical records and would have an offer or update by September 19.[13]

Months later, Acuity took special interest in "a pre-loss fusion C6-7" that Humes had undergone almost 13 years before the accident.[14]  It stalled its decision on Humes's claim until it had the records from that fusion and his most recent treatment.  But it's not clear that Acuity was able to obtain those records.[15]  Humes, tired of waiting for Acuity's response, filed this lawsuit on May 5, 2017, claiming that Acuity breached the insurance contract's underinsured-motorist coverage provisions and did so in bad faith.[16]

## Discussion

**I.      Acuity's motion for partial summary judgment [ECF No. 72]**

      **A.     South Dakota law governs.**

The parties dispute whether South Dakota or Nevada contract law governs in this case.  Federal courts sitting in diversity apply "state substantive law to state law claims, including the

---

[10] *Id*. at 78.

[11] *Id*. at 82.

[12] *Id*. at 84–85.

[13] *Id*. at 87.

[14] *Id*. at 113.

[15] Humes argues, but does not provide evidence, that the doctor who performed the procedure died and the hospital didn't maintain records that old.  He does submit a letter stating that he "treated [at] Resurrection Hospital of Chicago, now called Presence Resurrection Hospital and [by] Dr. Louis V. Pupillo[.]"  *Id*. at 120–21; ECF No. 72 at 104–108.

[16] ECF No. 1 at 6–11.

forum state's choice of law rules."[17] "Nevada tends to follow the Restatement (Second) Conflict of Laws (1971) in determining choice-of-law questions involving contracts . . . and insurance contracts, in particular."[18] Under § 193 of the Restatement, "[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state [that] the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties, in which event the local law of the other state will be applied."[19]

Nevada uses the "substantial relationship test" to resolve choice-of-law questions.[20] "Under this test, the state whose law is applied must have a substantial relationship with the transaction; and the transaction must not violate a strong public policy of Nevada."[21] Five factors guide this analysis:

    a. the place of contracting,

    b. the place of negotiation of the contract,

    c. the place of performance,

    d. the location of the subject matter of the contract, and

    e. the domicile, residence, nationality, place of incorporation and place of business of the parties.[22]

---

[17] *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010).

[18] *Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1063 (Nev. 2014) (internal citations omitted).

[19] Restatement (Second) of Conflict of Laws § 193 (1971).

[20] *Williams v. United Servs. Auto. Ass'n*, 849 P.2d 265, 266 (Nev. 1993).

[21] *Id*.

[22] *Id*. (citing *Sotirakis v. U.S.A.A.*, 787 P.2d 788, 790 (Nev. 1990)).

4

These factors weigh in Acuity's favor. The parties agree that contracting and negotiation occurred in South Dakota.[23] Humes also concedes that he is a South Dakota resident and that the policy was for his business, AM Development LLC.[24] Humes doesn't provide evidence of the company's place of incorporation or business, but he uses a South Dakota address for it in the policy.[25] Humes argues that the contract relates to an uninsured/underinsured-benefits claim in Nevada for the collision that occurred here and, while Acuity's claims adjustors may be situated in South Dakota, Humes's treatment and claim investigation/evaluation also occurred primarily in Nevada.[26] But the fact that the injury, treatment, and claim investigation occurred in Nevada is not dispositive: if the location of an accident "were enough to apply a state's law, then laws would be applied according to the fortuity of where the accident occurred rather than by the provisions of the insured's policy."[27] As Acuity puts it, this "case involves the breach of the contract drafted in and entered into within the State of South Dakota, not the motor vehicle accident itself."[28] So I grant the part of Acuity's motion asking for a determination that South Dakota law applies to this action.

---

[23] ECF No. 72 at 8; ECF No. 78 at 13.
[24] ECF No. 78 at 8.
[25] ECF No. 72 at 55 (policy declarations).
[26] Humes states that he splits his time between Florida, Nevada, and South Dakota, and that he received treatment in all three states. ECF No. 78 at 13.
[27] *Progressive Gulf Ins. Co.*, 327 P.3d at 1065 (internal quotation marks omitted).
[28] ECF No. 72 at 5 n.1.

### B. Genuine issues of fact regarding the reasonableness of Acuity's claim handling preclude summary judgment in its favor.

"Federal law governs the standard of review for summary judgment."[29] The court's ability to grant summary judgment on certain issues or elements is inherent in Rule 56(a). Because the purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses,"[30] the court's ability to grant summary judgment on certain issues or elements—a partial grant of summary judgment—is inherent in Rule 56. If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[31] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[32]

South Dakota recognizes the tort of bad faith in the context of insurance contracts.[33] "An insurance bad faith action in the first-party context arises when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured."[34] To succeed on this claim, a plaintiff must show that (1) the insurer lacked "a reasonable basis" for denying the policy benefits and (2) the insurer knew that it "lack[ed] a reasonable basis for the denial."[35] "When the issue is the delay of payments, rather than outright

---

[29] *Bell Lavalin, Inc. v. Simcoe & Erie Gen. Ins. Co.*, 61 F.3d 742, 745 (9th Cir. 1995).
[30] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.
[32] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).
[33] *Zochert v. Protective Life Ins. Co.*, 921 N.W.2d 479, 490 (S.D. 2018).
[34] *Id*. (internal quotation marks omitted).
[35] *Id*.

denial, the plaintiff must demonstrate that there was an absence of a reasonable basis for the delay and defendants' knowledge, or reckless disregard, of the absence of a reasonable basis."[36] Courts consider whether the insurer gave equal consideration to the insured's interests,[37] but "the question of good faith is a fact issue for the jury or other trier of fact."[38]

      Humes complains about the "years of delays in the investigation and evaluation of [his] claim" and Acuity's ultimate denial of the policy benefits.[39] Acuity points to the fact that Humes has no claims-handling expert to testify about the insurer's reasonableness in handling his claim to overcome this summary-judgment motion,[40] but neither does Acuity.[41] Acuity submits evidence that it prolonged its handling of Humes's claim, in part, because it lacked the necessary medical releases to obtain his pre-accident medical files. Humes challenges this reasoning because he corrected the deficient medical releases, and he argues that Acuity altered its look-back periods—first five years before the accident, then thirteen—when it did not need that information to evaluate his claim. Neither party points to policy language that bears on what look-back period is appropriate or timing constraints that apply in the claims-evaluation process, and I decline to make those arguments for them. But because a reasonable jury could conclude that Acuity unreasonably extended the look-back period, I deny Acuity's motion for summary judgment.

---

[36] *Zochert*, 921 N.W.2d at 490 (internal quotation marks omitted).
[37] *Kunkel v. United Sec. Ins. Co. of N. J.*, 168 N.W.2d 723, 726 (S.D. 1969).
[38] *Id.* at 730.
[39] ECF No. 78 at 19.
[40] ECF No. 72 at 4–5, 12.
[41] *Id.* at 5, 12.

## II. Humes's motion to strike Acuity's affirmative defenses [ECF No. 81]

Humes argues that because Acuity failed to produce evidence to support several of its affirmative defenses during discovery, the court should strike them under Federal Rule of Civil Procedure 12(f).[42] But a Rule 12(f) motion is not a vehicle to challenge the sufficiency of supporting evidence; it is used to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[43] "A 12(f) motion is a drastic remedy and is generally disfavored by federal courts."[44] Because this court cannot weigh the evidence in evaluating whether the pleading is sufficient,[45] Humes's motion to strike is the wrong vehicle for the relief he seeks, so I deny it. However, because Acuity has agreed to waive four of its affirmative defenses—comparative negligence (2), statute of limitations (9), statute of repose (10), superseding and intervening cause (16)—I deem these affirmative defenses withdrawn.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that defendant's motion for partial summary judgment **[ECF No. 72] is GRANTED in part and DENIED in part as stated above.**

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to strike **[ECF No. 81] is DENIED** but Acuity's affirmative defenses—comparative negligence (2), statute of

---

[42] ECF No. 81.

[43] Fed. R. Civ. P. 12(f).

[44] *Nevada Fair Hous. Ctr., Inc. v. Clark Cty.*, 565 F. Supp. 2d 1178, 1187 (D. Nev. 2008).

[45] *See Goldsby v. City of Henderson Police Dep't*, No. 2:18-cv-01912-GMN-VCF, 2019 WL 5963996, at *2 (D. Nev. Nov. 13, 2019) ("The District of Nevada has expressly declined to adopt the *Twombly* and *Iqbal* standard in determining whether to strike an affirmative defense.").

limitations (9), statute of repose (10), superseding and intervening cause (16)—are DEEMED WITHDRAWN.

Dated: July 1, 2020

_____
U.S. District Judge Jennifer A. Dorsey