# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Donald Humes,

    Plaintiff

v.

Acuity, A Mutual Insurance Co.,

    Defendant

Case No.: 2:17-cv-01778-JAD-DJA

**Order Granting Defendant's Motion to Bifurcate Trial and Granting in Part Defendant's and Plaintiff's Motions in Limine**

[ECF Nos. 112, 113, 114, 115, 116, 126]

Donald Humes sues Acuity, A Mutual Insurance Company, for breach of contract and breach of the implied covenant after the company failed to cover his automobile-accident injuries under his underinsured-motorist policy.[1] In anticipation of trial on May 24, 2021, Acuity seeks to bifurcate the trial between Humes's contractual and noncontractual claims, arguing that there is insufficient time to try both claims, resolution of Humes's breach-of-contract claim may preclude his bad-faith claim, and the mix of evidence for each set of claims will cause undue prejudice.[2] The parties have also filed multiple motions in limine. Echoing their motion for bifurcation, Acuity largely seeks to exclude evidence about the reasonableness of its past and present claims-handling procedures, offers of compromise, reserve amounts, and Humes's payment history.[3] For his part, Humes seeks to exclude pre- and post-litigation-conduct evidence, certain portions of Acuity's expert-witness testimony, evidence about the destruction

---

[1] ECF No. 1.

[2] ECF No. 126.

[3] ECF Nos. 112–15. By filing each motion in limine separately, Acuity has violated this court's pre-trial order requiring all motions in limine to be filed "**in a SINGLE, omnibus motion**." *See* ECF No. 104 at 51 (emphasis in original). Continued failure to abide by this court's orders will result in sanctions.

of surgical records, and portions of Humes's testimony about Acuity's claims-handling procedures and his attorney's capabilities.[4]

I find that bifurcation is appropriate in this matter, and I direct the parties to proceed to trial on Humes's breach-of-contract claim, holding in abeyance any bad-faith claims. Thus, I also grant the parties' motions in limine to the extent they seek to exclude evidence relevant only to Humes's bad-faith claims. I also grant Humes's motion to exclude Drs. Paul Biewen's and Joseph Schifini's testimony about a diagnosis of symptom magnification or malingering. And I deny Acuity's motion to exclude evidence that Humes paid his insurance premiums.

## Discussion

### I. Trial bifurcation [ECF No. 126]

Federal Rule of Civil Procedure 42(b) authorizes courts to order a separate trial for any claim when separation is in the interest of judicial economy, will further the parties' convenience, or will prevent undue prejudice. District courts have "broad discretion" to "bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings."[5] Where resolution of one set of claims at trial may obviate the need to resolve other claims, courts in this circuit have not hesitated to order bifurcation.[6]

---

[4] ECF No. 116.

[5] *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002); *see also Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004); *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982).

[6] *See, e.g., Cook v. United Serv. Auto Ass'n*, 169 F.R.D. 359, 361 (D. Nev. 1996) ("Bifurcating the breach of contract claim from the extra-contractual claims is appropriate in the instant case [because] if the plaintiffs do not prevail on their breach[-]of[-]contract claim, there can be no basis for concluding that the defendants acted in bad faith.") (citing *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986) (noting that the plaintiff's bad-faith claim against the insurance company could not proceed when denial of benefits was based on a reasonable interpretation of the contract)); *Adkisson v. Metro. Grp. Prop. & Casualty Ins. Co.*, No. 2:13-cv-2173, 2014 WL 12708722, at *1 (D. Nev. Feb. 4, 2014) (Dorsey, J.) ("The parties

2

I find that a bifurcated trial between Humes's breach-of-contract and bad-faith, implied-covenant claims is warranted. This case turns on whether Acuity had a reasonable basis to deny Humes's underinsured-motorist coverage claim and, if it did not, whether Acuity's failure to provide coverage was done in bad faith. Acuity asserts, and Humes apparently concedes, that if Humes cannot succeed on his breach-of-contract claim, there can be no basis for his bad-faith insurance claim.[7] And the parties agree that bifurcation will streamline the trial process—evidence needed to resolve the contractual and extracontractual claims can be effectively siloed; failure to separate that evidence may prejudice the jury's damages and liability determinations; and Acuity asserts that it will need to call Humes's attorney at trial to resolve his bad-faith claim.[8] So the breach-of-contract claim will be bifurcated (and tried first) from the bad-faith claim.

## II. Motions in limine [ECF Nos. 112–15]

Both parties seek to exclude evidence at the breach-of-contract trial. A motion in limine permits the court to rule on the admissibility of evidence or testimony in advance of trial.[9] Though not explicitly authorized by the Federal Rules of Evidence, the practice of ruling in limine on evidentiary issues is based on the "district court's inherent authority to manage the

---

agree that if [p]laintiff does not prevail on her coverage claim, there can be no basis for concluding that [the defendant] acted in bad faith.").

[7] ECF Nos. 126 at 4; 133.

[8] ECF Nos. 118 ("The prelitigation and postlitigation conduct of the parties, including any claim valuations and/or settlement offers, is irrelevant to the claims or defenses at issue in the breach of contract claim and are properly excluded and reserved for the trial on the extracontractual claims."); 126 at 4–6; 131 ("Plaintiff does not oppose Defendant's request for bifurcation.").

[9] *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *see Ohler v. United States*, 529 U.S. 753, 754–55 (2000) (affirming the district court's decision to admit prior felony convictions in limine).

3

course of trials."[10]  "However, in limine rulings are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial."[11]  Denying a motion in limine also does not guarantee that all evidence raised in the motion will be admissible at trial;[12] often it "merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded."[13]

A. **Evidence relevant to the bad-faith claim**

As I've found that bifurcation is appropriate in this matter, the parties appear to agree that any evidence exclusively relevant to Humes's bad-faith claim and not his breach-of-contract claim ought to be excluded from the first trial.[14]  This accords with the baseline requirements of the Federal Rules of Evidence, which provide that "[i]rrelevant evidence is not admissible."[15]  So I grant Acuity's motion in limine seeking to exclude offers of compromise and evidence of claim handling, evidence regarding the actions/inactions of the insurance adjuster and Humes's attorney, claims-file documentation, and settlement offers.[16]  And, to the extent that Humes plans to introduce evidence of Acuity's "pattern and practice" of undervaluing or denying underinsured-motorist benefits, I find that evidence is irrelevant to his breach-of-contract claim and grant Acuity's motion to exclude it.[17]  I also grant Humes's motion to exclude evidence

---

[10] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

[11] *Ohler*, 529 U.S. at 758 n.3 (emphasis omitted) (citing *Luce*, 469 U.S. at 41–42).

[12] *Tracey v. Am. Fam. Mut. Ins. Co.*, No. 2:09-CV-1257, 2010 WL 3724896, at *2 (D. Nev. Sept. 17, 2010) (citing *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).

[13] *Id.*

[14] *See* ECF Nos. 112, 131.

[15] Fed. R. Evid. 402.

[16] ECF Nos. 112.

[17] ECF No. 113.

regarding the parties' pre-litigation conduct,[18] Humes's alleged refusal to provide a list of pre-accident medical providers,[19] and Humes's testimony that Acuity acted reasonably in denying his claim,[20] which both parties agree is only relevant to proving Humes's bad-faith claims.

Additionally, I find that evidence about Acuity's reserve amounts should be excluded from the breach-of-contract trial.[21] While Humes argues that such evidence is relevant to both his breach-of-contract and bad-faith claims, he cites no precedent and makes no argument explaining how it is relevant to the former and not exclusively the latter. Instead, Humes argues that evidence of Acuity's reserve amounts may "belie a later claim that the insurer thought in good faith that there was no possibility of the claim falling within coverage," be relevant to the "insurer's state of mind," and lead to "admissible evidence" about the "thoroughness" of the insurer's investigation.[22] And he cites numerous judges who have held as much.[23] These arguments and cases only underscore that reserve-amount evidence is only relevant to Humes's bad-faith claims and should thus be excluded from the first trial on breach of contract.

**B.     Evidence relevant to the breach-of-contract claim**

Acuity seeks to exclude evidence that Humes paid his insurance premiums, arguing that he failed to produce that evidence during discovery and that those records are unfairly prejudicial

---

[18] ECF No. 116 at 5–6; 119 ("If Plaintiff is conceding that the only issue for the jury to consider is the value of the Plaintiff's contract claim for personal injuries, Defendant would stipulate that all pre-litigation conduct of both sides would be irrelevant.").

[19] ECF Nos. 116 at 8; 119 ("Again, if Plaintiff is withdrawing or dismissing his claim for bad faith, any . . . evidence or testimony regarding their handling of the claim, or responses to requests for information, would be irrelevant.").

[20] ECF Nos. 116 at 9, 119 at 10.

[21] ECF No. 114.

[22] ECF No. 128 at 3.

[23] *Id.*

5

because they raise the inference that Humes deserves coverage merely because he abided by the terms of the parties' contract.[24] Under FRE 402, "relevant evidence is admissible" absent controlling law dictating otherwise. FRE 403 authorizes courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[25] Under South Dakota law, "[t]he elements of a breach of contract are (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages."[26] As the parties do not appear to have stipulated to the enforceability of the promises contained in Humes's insurance agreement, he will need to prove his performance, so this evidence is relevant to his claims. Because Humes has already testified to this information and any potential prejudice it may cause can be assuaged by proper jury instructions and objections, I decline to exclude it at this stage.

For his part, Humes seeks to exclude Drs. Paul Biewen's and Joseph Schifini's expert opinions about Humes's alleged symptom magnification and malingering, arguing that they—as medical doctors and not psychologists—are unqualified to present causation testimony about psychological ailments.[27] Before a witness may come "before the jury cloaked in the mantle of an expert[]," the district court must take care to assure that the "proffered witness truly qualifies as an expert" under FRE 104 and that his "testimony meets the requirements of" FRE 702 and

---

[24] ECF No. 115
[25] Fed. R. Evid. 403.
[26] *Bowes Const., Inc. v. S.D. DOT*, 793 N.W.2d 36, 43 (S.D. 2010).
[27] ECF No. 116 at 6.

703.[28]  In its role as gatekeeper, the trial court must first determine whether the witness is "qualified as an expert by knowledge, skill, experience, training, or education."[29]  If the witness qualifies as an expert, the court then considers "whether the reasoning or methodology underlying the testimony is scientifically valid"—the reliability inquiry—and "whether that reasoning or methodology properly can be applied to the facts in issue" in the case—the relevancy inquiry.[30]  While Humes explicitly challenges the experts' qualifications, he implies that they lack the tools needed to diagnose symptom magnification or malingering.[31]

Based on my review of the doctors' curricula vitae, I find that they are qualified to testify about Humes's injuries, treatment, and physical pain, but they are not qualified to testify about a diagnosis of symptom magnification or malingering.  Rule 702's requirement that an expert be qualified "contemplates a broad conception of expert qualifications."[32]  "The advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of a qualified expert."[33]  But even the most qualified expert may not offer any opinion on any subject; the expert's opinion must be grounded in his or her personal "knowledge, skill, experience, training, or education."[34]

---

[28] *Jinro Am., Inc. v. Secure Inv., Inc.*, 266 F.3d 993, 1004, *amended*, 272 F.2d 1289 (9th Cir. 2001).

[29] Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995).

[30] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).

[31] ECF No. 116 at 6–7.

[32] *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)) (internal quotation marks omitted).

[33] *Id.* (quoting *Thomas*, 42 F.3d at 1269) (internal quotation marks omitted).

[34] Fed. R. Evid. 702.

There is no reason to doubt that these are qualified physicians, capable of assessing acute injury, pain management, and physical causation. Biewen received his medical degree from the University of Minnesota in 1985, did his residency in physical medicine and rehabilitation at the Medical College of Virginia, and has been practicing medicine for decades.[35] Schifini graduated from medical school at the University of Nevada, Reno in 1993, before becoming a resident in anesthesiology at the University of California, Irvine.[36] Both doctors are board certified, have significant practice experience in pain management and orthopedics, and have published and presented numerous times on the treatment of back pain, neck pain, rehabilitation, chronic pain, and pain management.[37] And Schifini is a clinical professor at the University of Nevada and Touro University.[38] Their qualifications render them suited to advise the jury about Humes's alleged pain and injuries and their causes and treatment.

But neither doctor appears qualified in psychology, and their purported diagnoses of symptom magnification[39] do not appear to have been made to a reasonable degree of medical certainty or probability. Biewen's diagnosis of symptom magnification is tenuous at best—he "found evidence of symptom magnification noted in the medical records."[40] And Schifini merely relays the opinion of Biewen, noting that Biewen found "evidence of symptom magnification" because of the absence of "evidence of acute injury and no justification for yearly

---

[35] ECF No. 116 at 14.
[36] *Id.* at 18–19.
[37] *Id.* at 14–21.
[38] *Id.* at 19.
[39] As best I can tell, both doctors declined to diagnose malingering. *See id.* at 56.
[40] *Id.* at 38.

8

repeat radiofrequency ablation procedures or lumbar facet injections."[41] Other courts have excluded such diagnoses of malingering or symptom magnification as "speculative in nature,"[42] and where they have not, they have required the diagnosing physician to be a psychologist, have psychiatric training, or to use accepted psychiatric-diagnostic tools.[43] Acuity's reliance on *EBI/Orion Group v. Blythe* and *Lobato v. State* does not persuade me otherwise—in *EBI/Orion Group*, the testifying experts were psychiatrists,[44] and *Lobato* seems entirely inapposite, as it addressed the admissibility of a handwriting-expert's testimony and makes no mention of physician testimony about malingering.[45] Finally, Acuity has not introduced any evidence indicating that its experts' clinical judgments, rather than psychological testing, about symptom magnification are sufficient diagnostic tools accepted in the broader medical community that might render their opinions reliable.[46] So I grant Humes's motion in limine solely to the extent it seeks to preclude Drs. Schifini and Biewen from testifying about a diagnosis of malingering or symptom magnification.

---

[41] *Id.* at 50, 56.

[42] *Hardesty v. Barcus*, No. CV 11-103-M, 2012 WL 5906797, at *14 (D. Mont. Nov. 26, 2012).

[43] *S.M. v. J.K.*, 262 F.3d 914, 921 (9th Cir. 2001) (finding psychiatrist's opinion reliable despite psychiatrist not relying solely on medical-literature's DSM criteria); *Garcia v. Los Banos Unified School Dist.*, No. 1:04-CV-6059, 2007 WL 715526, at *9 (E.D. Cal. Mar. 8, 2007) (finding non-physician's testimony about patient's malingering admissible where she used a differential diagnosis in accordance with accepted psychiatric-diagnostic methods).

[44] *EBI/Orion Grp. v. Blythe*, 957 P.2d 1134, 1137–38 (Mont. 1998).

[45] *Lobato v. State*, 96 P.3d 765 (Nev. 2004).

[46] *In re Pac. Fertility Cntr. Litig.*, No. 18-cv-01586, 2021 WL 842739, at *7 (Mar. 5. 2021) ("Although Chart objects to Dr. Grill's use of her clinical judgment to evaluate for malingering and deceit, rather than psychological testing, Dr. Grill testified that psychodiagnostics testing 'is not part of the standard of care in reproductive medicine.'").

9

### C. Stipulated evidentiary agreements

On May 5, 2021, I granted in part the parties' evidentiary stipulations, which included that Acuity would not suggest that Humes's 1999 surgery records were improperly destroyed or contain information adverse to Humes's claims. Thus, the portion of Humes's motion in limine seeking to exclude that evidence is moot and I deny it as such.

### Conclusion

IT IS THEREFORE ORDERED that Acuity's motion to bifurcate **[ECF No. 126] is GRANTED.** This case will proceed to trial on Humes's breach-of-contract claims on May 24, 2021, and Humes's extracontractual claim will be held in abeyance.

IT IS FURTHER ORDERED that Acuity's motions in limine to preclude offers of compromise and evidence of claim handling, pattern and practice evidence, and evidence of reserve amounts **[ECF No. 112, 113, and 114] are GRANTED.**

IT IS FURTHER ORDERED that Acuity's motion in limine to preclude evidence of premium payments and claim history **[ECF No. 115] is DENIED.**

IT IS FURTHER ORDERED that Humes's omnibus motion in limine **[ECF No. 116] is GRANTED IN PART.** Evidence to be excluded at trial includes: the parties' prelitigation conduct; Drs. Biewen's and Schifini's testimony diagnosing symptom magnification and malingering; Humes's alleged failure to provide a list of pre-accident medical providers; and Humes's testimony indicating that Acuity acted reasonably in denying his claim, and that he is

critical of his attorneys' prelitigation activities. The remaining requests in Humes's motion are **denied as moot.**

_____
U.S. District Judge Jennifer A. Dorsey
Dated: May 14, 2021