UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Donald Humes,<br><br>    Plaintiff<br><br>v.<br><br>Acuity, a Mutual Insurance Company,<br><br>    Defendant | Case No.: 2:17-cv-01778-JAD-DJA<br><br>**Order Denying Motions for New Trial, Remittitur of Future Damages, and for Entry of Judgment**<br><br>[ECF Nos. 177, 182] |

Donald Humes sued his UM/UIM insurer, Acuity, for breach of contract and bad faith related to a 2013 car accident in which Humes claims he suffered injuries to his cervical and lumbar spine. The claims were bifurcated, and the contract claim was tried in May 2021. The four-day trial ended in a $860,794.06 jury verdict for Humes, which includes $270,000 in future medical expenses and another $270,000 for future pain and suffering.[1] Arguing that these future damages are based upon speculation and improper evidence, Acuity moves this court to remit them or order a new trial.[2] Humes asks the court to deny that motion, enter judgment in his favor, and add more than $200,000 in prejudgment interest.[3] Because the verdict was not contrary to the clear weight of the evidence, I deny Acuity's motion for a new trial or remittitur. But because the bifurcated, extra-contractual claim remains untried, and Humes has not shown under the applicable law that judgment should be entered, I deny his motion and direct him to advise the court how he intends to proceed on the outstanding claim.

---

[1] ECF No. 175.
[2] ECF No. 182.
[3] ECF No. 177.

**Discussion**

A.    **Acuity's Motion for New Trial or Remittitur [ECF No. 182]**

Although the car accident that underlies this case happened in Las Vegas, Nevada, Humes resides in South Dakota and spends his winters mostly in Florida.[4] After the accident, he received medical treatment in Nevada, Florida, and South Dakota.[5] At trial, Humes presented the testimony of two of his treating physicians: Dr. Raimundo Leon from Las Vegas and Dr. Trevor Anderson from South Dakota. Dr. Leon reviewed Humes's past medical bills and opined that they were reasonable and necessary to his injuries after I deemed him qualified to provide that opinion based on his experience and skills.[6] He was also permitted to testify about what future procedures he believed Humes will need and how much those procedures would cost if performed in Las Vegas.[7] Because Humes did not disclose in discovery that Dr. Leon would be providing a cost comparison between Las Vegas and the other markets in which Humes is likely to seek his future treatment, I did not permit him to testify to the anticipated cost of those services elsewhere.[8] So it was Dr. Anderson who supplied testimony about the costs of care in

---

[4] *See, e.g.,* Trial Transcript ("Tr.") Day 1 at 174–78 (Barbara Humes testimony), 202–03 (Wilson testimony). I refer to portions of the trial transcript that have not been filed on the docket as "Tr."; if filed, I refer to the ECF number.

[5] *See, e.g.,* ECF No. 181 at 45–48 and 96–101 (Las Vegas), 85–95 (South Dakota), 95–96 (Florida).

[6] ECF No. 181 (Leon testimony) at 137.

[7] *Id*. at 112, 131–33.

[8] *Id*. at 110. This ruling is consistent with the trial court's exclusion of evidence in *de Beaudrap v. Werner Enterprises, Inc.*, which Acuity relies on in its motion. *See* ECF No. 182 at 14–15. Just as I limited Dr. Leon's testimony to the Las Vegas market, the district court in *de Beaudrap* held that an expert in New Mexico medical costs was "unable to provide an opinion as to the reasonable costs for such treatment since she has no information as to the costs for that treatment and related medication in Canada," where that plaintiff lived. 2005 WL 8164191, at *4 (D.N.M. Mar. 24, 2005). But whereas the judge in *de Beaudrap* also precluded the expert from testifying that the plaintiff would require future care because "none of Mr. de Beaudrap's treating doctors ha[d] indicated that he need[ed] such care," *id.,* Humes had two doctors testify that he will

South Dakota. He testified about the procedures he performed for Humes there, the reasonableness of his billing for them, and his opinion that Humes will continue to need those procedures frequently to relieve his pain.[9]

During closing argument, plaintiff's counsel suggested to the jury "that the value of [Humes's] future medical expenses [would be] between $435,209.28 and $571,212.18" and that an equal amount for future pain and suffering would be fair.[10] The jury cut that down by about half and awarded Humes $270,000 in future medical care plus another $270,000 in compensation for future pain and suffering.[11] Acuity moves for a new trial or remittitur of the future-damages award, arguing that there was no proof that Humes will seek future treatment in Las Vegas, so the jury's award is unsupported by the evidence.[12]

On Acuity's pretrial motion, it was determined that South Dakota law governs this case.[13] South Dakota law recognizes that "plaintiffs suing for personal injury are not guaranteed the recovery of any predetermined amount of damages."[14] "The issue of damages in a personal injury action is peculiarly a question for the jury. The jury's verdict should not be set aside except in those extreme cases where it is the result of passion or prejudice or where the jury has

---

require continued treatment. ECF No. 181 at 133 (Leon), 253 (Anderson). And Humes's failure to disclose that Dr. Leon would opine on the cost of future treatment outside of Las Vegas was met with an appropriate sanction at this trial: Dr. Leon's opinions were limited to the Las Vegas market. *See id*. at 102–12. I find that further sanctions are not merited.

[9] *Id*. at 253–55 (Anderson testimony).

[10] ECF No. 179 at 18 (plaintiff's closing argument).

[11] ECF No. 174 (verdict). This was in addition to the $160,397.03 for past medical bills and another $160,397.03 for past pain and suffering. *Id*.

[12] ECF No. 182.

[13] ECF No. 97 at 5.

[14] *Andreson v. Black Hills Power & Light Co.*, 559 N.W.2d 886, 888 (S. D. 1997) (upholding jury verdict although "mere speculation remain[ed] as to the categorization of damages").

3

palpably mistaken the rules of law by which damages in a particular case are to be measured."[15] And when considering a motion for new trial based on a damages-calculation challenge, the evidence must be "viewed in a light most favorable to the verdict."[16] If the jury's verdict "can be explained with reference to the evidence," it should be affirmed.[17]

Just how the jury arrived at Humes's future-damages award is unknown, but it can be explained with reference to the evidence. Dr. Leon testified that Humes will require procedures known as rhizotomies occasionally for the rest of his life, the procedures cost about $20,700 each in the Las Vegas market, and Humes has a life expectancy of about 21 years.[18] Dr. Anderson testified that Humes will need other procedures—injections and ablations—to manage his pain indefinitely.[19] There was ample evidence that Humes had sought treatment in various states and from various providers and would continue to do so[20] and that Dr. Leon's charges for procedures in Las Vegas were far higher than Dr. Anderson's procedures in South Dakota.[21] So it is entirely possible that the jury applied some reduction to Dr. Leon's cost estimates to account for the likelihood that Humes will seek his treatment outside of Las Vegas.

The jury was also provided detailed copies of all of Humes's medical bills, which totaled $160,397.03 in past care.[22] The fact that the jury awarded Humes this precise amount in past

---

[15] *Itzen v. Wilsey*, 440 N.W.2d 312, 313–14 (S.D. 1989).
[16] *Id*. at 314.
[17] *Andreson*, 559 N.W.2d at 888 (quoting *Miller v. Hernandez*, 520 N.W.2d 266, 272 (S.D. 1994)).
[18] ECF No. 181 at 131–33 (Leon testimony).
[19] *Id*. at 253–56 (Anderson testimony).
[20] Tr. Day 3 at 23 (Humes testimony).
[21] *Id*. at 254–55 (Anderson testimony).
[22] *Id*. at 137; Exhibit 31 (summary of past medical expenses).

damages makes it clear that they agreed with his experts that his past care had been appropriate, necessary, and reasonably charged.[23] That care included a variety of treatments and procedures, and it is also likely that the jury took information from those bills to reach their calculation of future medical expenses and pain-and-suffering damages. When compared to the award of damages for prior medical expenses, pain, and suffering, the future-damages award is not unreasonable. I thus cannot conclude that the award was the result of passion or prejudice or that the jury palpably mistook the rules of law by which damages should be measured. So I deny Acuity's motion for a new trial or remitter of future damages.

**B.     Plaintiff's Motion for Entry of Judgment [ECF No. 177]**

In a two-page motion with no points or authorities, Humes asks the court to take the jury's verdict, apply the stipulated offset of $105,000, and enter judgment in his favor for $755,000 plus prejudgment interest from June 1, 2017.[24] The response and reply brief illuminate that more than a scant few paragraphs are needed to address the more complex issue not briefed in any meaningful way: whether the law permits prejudgment interest on future damages.

---

[23] *See* ECF No. 174 (verdict); ECF No. 181 at 137 (Leon testimony). The more concrete nature of this opinion testimony about Humes's medical needs and their costs also materially distinguishes this case from the primarily Louisiana-based cases that Acuity block-quotes with no analysis at ECF No. 182 at 11–19.

Acuity's argument that "[t]he amount billed for past medical services is not sufficient proof or relevant to the reasonable value of future medical services that the plaintiff is reasonably certain to require," ECF No. 182 at 12, is a misstatement of law. Despite insisting that South Dakota law governs this case, *see* ECF No. 72, Acuity relies on the California Court of Appeal's decision in *Corenbaum v. Lampkin*, 156 Cal. Rptr. 3d 347 (2013), for this proposition. But *Corenbaum* does not stand for it. The issue in *Corenbaum* was the admissibility of evidence of the full amount billed "rather than the lesser amounts accepted by medical providers as full payment," not whether past medical bills can serve as relevant evidence of the cost of future medical treatment. 156 Cal. Rptr. 3d at 365. Because this billed-versus-accepted distinction was not at issue in Humes's trial, *Corenbaum* is inapposite here.

[24] ECF No. 177.

Because Humes has not sufficiently supported this motion for judgment, I deny it without prejudice.

But there's a more fundamental problem with Humes's request for finality at this point: this case isn't over. On Acuity's motion, I bifurcated the trial between the contract claim (which was tried) and the extracontractual claim (which was not).[25] So the trial only resulted in a partial resolution, and Humes has not attempted to show why a partial judgment is warranted under Federal Rule of Civil Procedure 54(b). Indeed, it remains unknown how—or even if—Humes still wishes to pursue his untried bad-faith claim. Accordingly, Humes has until February 28, 2022, to either (1) dismiss the remaining claim or (2) prepare and file with Acuity's cooperation a joint pretrial order for this remaining claim.

## Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion for New Trial or Remittitur of Future Damages **[ECF No. 182] is DENIED.**

IT IS FURTHER ORDERED that Plaintiff's Motion for Entry of Judgment **[ECF No. 177] is DENIED.** Plaintiff has until February 28, 2022, to either (1) dismiss the remaining claim or (2) prepare and file with Acuity's cooperation a joint pretrial order for this remaining claim.

                                                                                                 _____
U.S. District Judge Jennifer A. Dorsey
February 1, 2022

---

[25] ECF No. 135 at 2 ("I find that bifurcation is appropriate in this matter, and I direct the parties to proceed to trial on Humes's breach-of-contract claim, holding in abeyance any bad-faith claims.").